Thank you. United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. We have four appeals to hear this morning. We're hearing them remotely because of the storm that has come through Atlanta this morning. Counsel, we appreciate your last minute adjustment to that change in plans and we're familiar with your cases. We've read your briefs, the authorities cited in your briefs, and at least portions of the record. So in the limited time that you have this morning, you should feel free to get straight to the heart of your argument. We'll probably have some questions. Please pay attention to the clock up on the screen. When it expires, it's time for you to wrap it up. If we have some questions for you, you will be on our time in answering those questions. But do be mindful of the clock. We're going to begin with Rockwater, Inc. versus the United States. Ms. Rubin, are you ready? Yes, your honor. Good morning and may it please the court. I represent the government in this action. The undisputed facts, including Rockwater's own testimony, establishes that the semi-trailers were designed for the primary function of stationary peanut drying, not off-highway transportation. Rockwater has identified no alterations done to facilitate off-highway transportation or that limit the legal capacity of these semi-trailers to transport on the public highways. Under the plain statutory language, these undisputed facts are fatal to Rockwater's refund plan. As courts have already held, there is a two-part conjunctive test under the statutory language. It must be a special design for the primary function of off-highway transportation, and that special design must substantially limit on-highway transportation. Both of these are required. If you fail either one, you don't get to avoid paying this tax. It is undisputed that these are semi-trailers for highway vehicles and that they are subject to the tax unless they satisfy this exception, both requirements, and they can't. Their own witnesses' testimony, the undisputed facts, establish that they were designed, any special design was for stationary peanut drying. The information is that, as I understand it, that they cannot satisfy either of those two requirements. It's a conjunctive requirement. That's correct. That's absolutely correct. And all you have to, because it's conjunctive, all you have to establish is that they fail at least one of them. That's correct, Your Honor. We think it's clear under the undisputed facts that they can't satisfy either one. I think a lot of the briefing is sort of focused on the special design in part because of, really, that's where the district court erred in this case primarily was to say, hey, I see some special design. I'm going to ignore all of the standard design elements, all of which, by the way, have to do with transportation. And I would say this looks different than other trucks on the highway. It has a dryer vent. It has a special floor. Counsel, as a remedy, are you asking us, and by that I mean the decoral language that you're asking us to impose, are you asking us simply to reverse summary judgments or are you asking us for the entry of judgment in your favor on your own re-judgment motion? We actually believe that it would be appropriate for this court to enter summary judgment because the facts are undisputed. Well, certainly there are some facts that appear to be undisputed, although even in your brief you that there are some facts that are disputed, specifically regarding the center of gravity is one that you say that you did not agree with their representation of the facts. There are a couple others too. But let me ask this. So on the second factor regarding the substantial limitation on public highway driving or the public transportation on the public highways of a load, which goes to the second factor, there does seem to be, I certainly agree that as to the factors that are listed in the statute that some, if not all of those, favor the government here. But those are not exclusive and there does seem to be some indication that this truck has some limitations, maybe even some that are substantial in carrying loads. For instance, the open top, I mean the reason why crates are closed is because you don't want to expose to the elements most things that you're transporting. Same thing with the openings on the sides. The loading, the special loading that has to be done at an angle, those are done, normally it's done, you know, normally with a barn door so you can easily put things in a crate. Here you cannot easily put things inside, it has to be done specially. In addition, it being done in steel weighs it down significantly. You've been muted. I'm sorry, that was, I touched the button by Certainly the steel design changes things. The fact that the center of gravity is increased, now the effect of that I know is in dispute, but that that happened is not in dispute. The perforated bottoms leave for openings. There's a couple of other things too, but those things all seem to indicate that while it can be used on the public roads, there are limitations on using for a normal load in order to bring them on the public roads. Is there not? I think what it always shows is that it has been specially designed to transport a particular type of load. It doesn't say that there's any limit on its legal ability to carry a load on the roads, and that's really where the, there's really, I don't think any dispute, there is a higher center of gravity, but it simultaneously did not cause it to be legally unable to carry loads safely on the roads at highway speeds. Is it your argument that those special designs though too pertain to the loading and the type of load that it has as opposed to a special design for off-highway transportation? That's correct. I mean, there's absolutely... It has to be a special design, does it, as I understand your argument, for a particular kind of transportation, off-highway transportation, not a special design for dealing with a particular kind of load while it's not transporting anything. That's right. It has to be specially designed for the primary function of off-highway transportation, and as the First Circuit held in Hostar, that means you need to say, with a coal truck, that's the classic example that Senator Benning used in the legislative history, is changed to deal with the terrain of a coal mine site, and that made it so that it was really limited in its ability to be on the public highways. That's not true here. They have not identified any transportation-related elements that were changed, and not any elements that were changed to facilitate off-highway transportation. Well, that certainly goes to the first factor, but the conversation you and I were having, and I think I started off, was by talking about the second factor, and that goes to whether there's a substantial impairment in the capability of transporting a load over the highways, and so I go back to the questions I asked you, which are, if there's a big opening on the top and two big openings on the side, what load can you be taking down on the public highways that is not substantially impaired for a significant distance? Well, I mean, certainly for the purposes of, say, carrying peanuts, they were able to. That's why they've designed it this way, and there's other loads one can imagine. In the discovery, they were asked, have you ever used this for something like pecans? But the regulation doesn't, or sorry, the statute doesn't require us to imagine. It simply requires whether there's a substantial impairment, and if it's open on all those sides, that would seem to impair the ability to, on average in Maine, carry a load from point one to point two. I don't recall it having big openings on the side, but it definitely has an open top. Isn't there an opening on the side in order to allow the dryers in on one side, and isn't there a half opening on the other side to allow for the, when they tip it over for the dumping of the peanuts into the final storage facility after drying? Aren't there openings on both of those sides? There is a vent, for sure. I don't know that that vent is something that is, would impair it on the road at all. Let me talk about the second factor in those physical characteristics, because I think it depends on what is meant by substantially limited and impaired, and we know here it's been, it can go over 25 miles an hour, right? Yes. Okay, I'm going to let, let's take his undisputed facts, but let's take the other undisputed facts. It can go over 25 miles an hour on the highway, right? Right. Nobody disputes that. It's also been certified by both state and national registered to travel on the highway. Yes. Right? So, and it's, those factors seem to show that it's substantially able to go across the highway, no matter what the load is. Okay, it can travel, it can be used, and what his factors go to, maybe it would be more efficient if we didn't have these things, but it's not the transportation and the movement over the highway is not substantially impaired. Is that your argument? You can look at these other factors, even take what he says, but the transportation is not substantially limited or impaired. Right, that's correct. So, if at any point in time, the owner of these trucks, after it has left the retail store, this is a retail tax, it's taxed when it's sold the first time. So, when it leaves the store, it's perfectly capable of going without additional changes to the vehicle to be used on the open highway at highway speeds without special limits or special permits. Let me ask you this. I've got a photo from the record that I think is a photo of this trailer. I don't know if we can, can you see this? Yes. Yeah. Yes. That's it, right? That's it, absolutely. And that doesn't have openings on the sides. No, I don't believe it has. Maybe a little vent at the bottom or something, but there's certainly the gate that in the back opens. It's certainly open at the top, although it looks like it has some kind of rolled up canvas awning type material that maybe, I guess, can be used to roll over the top. Is that right? I believe so. I can't say that the record is super clear as to whether they ever do that with these trucks. But the photo I'm looking at, which is R15-317, is the record copy of the trailer we're talking about, right? Yes, absolutely. Can I ask, counsel, so the district court did, as I understand, three things. It granted summary judgment for Rockwater on the merits of the excise tax issue. It ruled for them with regard to the awarding of interest for two reasons. One, because it ruled for them on the merits, and the other because it found a reasonable cause for its litigation position. And then it did the same thing regarding penalties. It refunded penalties on the alternative because, A, they won on the merits, and B, because there was reasonable cause. Have I articulated the order correctly? You have. It also rejected their claim for attorney's fees, which they did not in turn appeal. I apologize. You're right. So let's put attorney's fees aside. I've read your brief, and I don't see any argument on the alternative regarding reasonable cause for either interest or penalties. Can we assume that you're just not appealing that? There's a quick reference in one footnote, I think two sentences. I think it might be footnote 10 in the initial brief. A, is that sufficient in order to preserve? And B, are you making an argument there that the district court erred in its alternative, or are you saying that we shouldn't read the order in a particular way? Because those seem to be very different things. We're saying that you shouldn't read the district court's order to hold that reasonable cause applies to interest because it doesn't. Whether the district court erred or not is definitely an appealable issue for you, but I just don't know where you've said that it erred. You've asked us to read it a certain way in a way that it can't be read, at least fairly, and I don't know where else it's mentioned throughout the course of your initial brief. So I'm wondering where you've appealed that, and my second question is, have you appealed the penalty part at all? We have not appealed the penalty part at all. We don't necessarily agree with it, but we did not appeal it, but I would say that that footnote's enough to say there is no reasonable cause defense to statutory interest. Statutory interest is mandatory under the statute that we cited right there in that footnote, and there's not much more to say than that. So my last question, I promise, is you want the last line of the opinion to be, we reverse the summary judgment, we remand for entry of judgment for the government, entry of an interest award, and affirm with regard to penalties, correct? Yes. Okay, thank you. Thank you. Yeah, there were cross motions for summary judgment, so you do want us to remand with instructions to enter that summary judgment for the government, right? Yes, Your Honor, we do. Thank you. All right, let's hear from Mr. Hanson. Thank you, Your Honor. Good morning. May it please the court, my name is Jason Hanson, and I have the distinct privilege of representing the Appellee of Rockwater, Inc. Peanut drying wagons and other farm equipment are not treated the same as over-the-road trailers that spend 365 days of the year on the road hauling cargo, and the district court should be affirmed for three reasons. First, the plain language of the statute and the broader statutory intent confirm protection of these specially designed peanut drying wagons through a clear two-prong test. Second, that clear statutory language emphasizes the special design elements which require a comparison of the peanut drying wagons to your traditional over-the-road trailer that hauls cargo 24-7, 365. Third, under Celotex and Anderson v. Liberty Lobby, there are no genuine disputes as to the material facts of those facts include the primary peanut drying functionality that drove the invention of this vehicle 70 years ago, drove every modification of its sense, and resulted in its substantial impairment to the tune of 42-week dormancy by the very industry that utilizes these things. And even during the 10-week harvest season, there is no dispute that it spends less than three percent of its life on the road. So those three points dispose of the IRS's attempt to impose a 12% excise tax on a vehicle that spends less than one percent of its life on the road. This is a statutory interpretation inquiry, and the clear language of the statute imposes that two-prong test to the degree of looking at the special design elements. In the broader context, the excise tax is imposed on highway vehicles. But counsel, isn't it the special design? The whole dispute is I understand it, and I think this is the questioning that was teased out by the chief judges, is whether the special design elements are there in general or whether they go to off-highway transportation. Because if they go to off-highway transportation, then we look to see whether, if they go to that, then we look to see whether that's primary purpose or primary function or not. If they don't go to those things, then it really seems to be besides the point. And that gets us to Hoster, where yes, it's a modified trailer for boats, but it really isn't for off-highway use. And so what design features, is my question to you, go directly to off-highway use? Not for loading of peanuts, not for stationary, but for transportation off-highway. I think that kind of imposes a couple of points there. One, that the term transport is broader than just movement, right? If I were to transport my son to my mother's house three blocks away, I would have to carry him if I'm walking, my legs are doing the movement. You're 100% right, but at some point, something is moving from one thing to another. Yes, there has to be a stationary point one and stationary point two, but at some point, there needs to be movement between those two points. And so what, I guess my question is, what special features go to the movement from point A to point B? Sure, and the special features are the additional weight from the truss and the I-beam. If you think about a traditional semi-trailer van, it doesn't have an I-beam on the chassis. The wheels, the legs are bolted straight. But that's not done, as I understand it, for the purpose of the off-road transportation. In other words, unlike the worldwide case with the coal mining there, it was done because of the nature of the terrain of the off-road. Here, as I understand it, that's done in order to carry more peanuts and to make sure that the drying facility and the meshing on the bottom is done and the center of gravity is such that it maximizes drying capacity. How does that go to transportation? So it goes to transportation because it has to be transported through farm roads and farm fields and farms. There's no doubt that you're doing off-roading. My question is, how did the special design features go to the off-roading? That seems to be the statutory question for the first prong. Well, I think you have to think about the fact that it gives it stability in the dirt. That's the same thing with the sand feet. All of these things go to giving it the ability to move. The sand feet don't go to transportation. The sand feet go to stationary use. The loading, that's what the sand feet are about. Right. I think what we don't distinguish is that the transporting of it is not just the physical movement of it, but the necessary elements to allow it to physically move in those spaces. Well, if what you're depending upon is what happens when it's stationary, you're going to be in a bad way. I disagree, obviously. No surprise there, right? But I think that the elements of the physical design elements here are broader than just the wheels and the tires and the suspension. I agree with that, but you're really kind of evading the question, which is, what is it about that special design that is a design for off-way transportation as opposed to some kind of special design for what happens when the trailers are stationary? Well, I think, Your Honor, if the question that I'm getting is that the physical movement, the wheels and the axles and stuff, they're no different than any other highway vehicle. We would agree with that, but that only starts the inquiry in our view. What he's trying to say, the design features all go for the stationary loading purpose. Okay, we don't see how any of these design features go to transportation. They go to the stationary loading. Do you see what we're trying to say? They all sort of facilitate the stationary loading process. Loading, unloading, drying, but not transportation. I understand the distinction that the court is making, and I do respect that. I think the caveat here is, if you look at Section 4051, it distinguishes between a chassis and a body, and it implied the excise tax to both. So, if the limitation was just to wheels and tires and the physical components that move it from point A to point B, then we would never tax the body. We wouldn't In other words, if there's still tires on a trailer, there's still axles on a trailer, there's still weight and size and width on a trailer as there is in the chassis. So, there still would be things in the trailer that would be different, either as a whole or in part, in order to facilitate transportation off-highway, which is what this seems to be aimed towards. I'll ask it a last time. What design features go to that with regard to the trails? I don't mean to evade the question because I admit that if we're focused just on wheels and the suspension and things like that, then there are no special design elements in that context. Our view of the statute is that it's a broader because you have to look at the entire vehicle and the special design elements are the ones that we've talked about. I understand the court's view is that those are loading and unloading features. We view those as essential to the entire transportation because if they did not exist, this thing would never move. Let me go to the second factor then because I think we've run down the first factor. It seems to me that even the district court conceded that there was evidence on the other in the government's favor, but there's some statement in the order for that. Where that's the case, how could the court possibly grant summary judgment for you where all of the statutory factors weigh in favor of the government? I think you conceded that or at least close to and certainly district court found it. There may be evidence on your side on that. How is summary judgment appropriate in that circumstance? I think that it's because of the word substantially that there's room for obviously some design and some ability to utilize the roadways, but the fact is that both parties viewed that the facts were not in dispute in this case. It led to both cross social. Just because the facts aren't in dispute doesn't mean there isn't a trial issue. In fact, two of the cases that y'all cite are trial cases where this very thing happened. There was some evidence on one side. There were some things on the other. They took it to a jury or they had a trial on it and a jury came back and said it was or was not substantial. I just don't understand why if all three statutory factors weigh in favor of the government, but you have presented some evidence which suggests that there are limitations on the driving of this. Why is that not create an issue of fact? I think that the district court felt comfortable that the facts, all of them together, would lead to a logical conclusion that if this thing is spending less than 1% of its life on the road as a matter of reality, and that's uncontroverted in the record, that no reasonable juror would ever find that it wasn't substantial. That's the problem. He was looking at how much it's used by the owner, not how much it is when it is used is substantially limited. See, that's that's the problem right there. He looked at how often it's used and during a short harvest season to come up with a substantial limitation, not with regard to how it's limited in transporting. It's just that this owner only uses it that much. Let me ask you another. Yeah, right. It's got the capability to be used all the time. But as I understand it, these trailers can also go up to 55 miles over the highway. They can travel by road speed limits of 55 miles per hour. Isn't that undisputed? They can do that. They're capable of doing that. That is that is undisputed. They're capable. Okay. And and they don't require any special permits for oversize or any type of permitting is is that's undisputed, right? You're correct, Your Honor. And they have to be licensed as safe on public roads before they are licensed. I mean, they have to be determined they're safe on public roads to go 55 miles before they get these licenses. Is that correct? That's correct. Okay, thank you. And to your point, Your Honor, that those legal permissibility aspects are what define a highway vehicle that the broader definition before we ever even get into these exemptions of a highway vehicle is when capable of transporting a load over the public highway is then if it wasn't legally capable, it was a race car that couldn't be registered on the road because it wasn't street legal. Yeah, right. But even with these other features for the peanut drying features, they still don't limit any of that. They're still capable of doing it. That's the point. Well, they're capable of performing the function for which they're designed and there is no special requirements. There's no special hoops to operate during that 10-week season. But to the point of their capabilities, the peanut drying, the peanut industry does not use them to transport them over the public highway. When the peanuts move 365 days a year to shellers, to mars, to be put in candy bars, they move all the time across this country and the peanut industry does not use peanut drying wagons for that. They go out and purchase or rent or lease. We understand that they use them to go from the fields to the drying and the buying points. Yes, ma'am. Okay. And that is they go about I think 20 miles on average and across the public roads to the drying point. Right. That's correct, Your Honor. And it would be the logical conclusion that if they were capable of being an over-the-road traditional semi-trailer hauler of any sort of that the peanut industry would find some way to utilize them instead of letting them sit dormant. That's not the test, counsel. The test is whether they're substantially limited in their ability to transport a load. And, you know, as Judge Holt went through all the factors that go to that determination, they all favor the government. The ability is there. How the industry actually uses them is not the test. I think it informs the physical design element aspect of it, which to Judge Luck's point earlier, the fact that they are an open-air design, you have a perforated floor. You can't load palleted items on it. You can't utilize anything that can't be exposed to the elements in them. And all of those factors lead to the conclusion that they're substantially limited. The test gives us consideration that may be taken up of certain factors, but it's not an exclusive list. And the physical limitations of the ability of this thing to be utilized on the road 24-7 are evident in those physical design elements and confirmed by the fact that the peanut industry doesn't use them for 42 weeks out of the year. And if a peanut is moving all of the time, these things are specifically designed to move peanuts, but they're not specifically used by the people that know their limitations the best for 42 weeks out of the year. The only two logical conclusions are that it's substantially impaired or the peanut industry has lost its mind. And of course, we don't believe that they've lost their mind. I'm not accusing anybody here of thinking that. They're substantially limited in their ability to transport alone. The whole scheme of this is to tax those that benefit the most from the use of public highways. And these peanut drying wagons spend less than 1% of their life on the public highways. They're specially designed for the primary function of facilitating the transporting of peanuts pursuant to that drying function. If it was not that intent, they would spend 365 days of the year on the road transporting peanuts, and they simply do not. For those reasons, I'm out of If you have questions, I'm happy to go. But for those reasons, we'd ask you to affirm the district court's granted summary judgment. Thank you, Mr. Hanson. Ms. Rubin, you have three minutes. Ms. Rubin, you are muted. My apologies. I think the most important part of my opponent's responses was when he acknowledged as far as all the transportation-related elements, there's just no difference between this and a regular over-the-road hauler. Not that we think that you have to be an over-the-road hauler to be subject to this tax. You merely have to be a highway vehicle, which is even ones that need a special permit or have substantial limits can still be considered a highway vehicle. You just have to ask, does it fit within one of the exceptions? So you have this vehicle, it's perfectly capable when it leaves Rockwater's store to go and be used on the public highway. It has not been altered in any way as far as its transportation elements, and that means it cannot satisfy the industry wants a test that is focused on what the primary use of the vehicle is, and they need to go to Congress. That's absolutely correct. You know, there used to be a primary use way back in the early 1970s. The IRS got rid of it in 1977, and when Congress codified the off-highway exception, it used the modern regulatory test, not the older primary use test. So I would seem to say that that's definitely not what Congress wants, and it certainly isn't what the plain language says. The plain language says, what's its design? Is it designed for the primary function of off-highway transportation? We know that's not true here. We know that's not true here. They acknowledge that there were no changes done to the transportation elements. All of the changes were done to facilitate stationary drying. We know that drying is stationary. That's what the record tells you, and we also know that it is perfectly capable to legally transport goods on the public highway at highway speeds without any limits or special permits. If there's no further questions, we ask you to reverse. We ask you to remand for entry of summary judgment and for issuance of imposition of statutory interest. Okay, Ms. Rubin, we understand your argument, and we appreciate both of you appearing remotely this morning on such short notice. Well, thank you so much, and we appreciate the safety of not having to come in person, so thank you. Good, thank you.